# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TENET HEALTHCARE LTD., | § | |
| d/b/a Park Plaza Hospital, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3534 |
| | § | |
| UNICARE HEALTH PLANS OF | § | |
| TEXAS, INC., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This case arises from a dispute over payment for medical services provided by

Plaintiff Tenet Healthcare Ltd. d/b/a Park Plaza Hospital ("Tenet") to Reba Sylvester

("Sylvester"), a former employee of Defendant Sheltering Arms Senior Services ("Sheltering

Arms"). Defendant UniCare Health Plans of Texas, Inc. ("UniCare") is a health maintenance

organization that had entered into a Hospital Managed Care Agreement ("Managed Care

Agreement") with Tenet, under which UniCare would pay negotiated rates for Tenet to

provide "Covered Services" to "Members" pursuant to "Service Agreements."

Pending before the Court in the action is Defendant UniCare's Motion for Summary

Judgment [Doc. # 27] ("UniCare's Motion") and Defendant Sheltering

Arms' Motion for Summary Judgment [Doc. # 28] ("Sheltering Arms' Motion").[1]  Upon

review of the parties' submissions, all pertinent matters of record, and applicable law, the

---

[1]     Tenet has responded [Doc. # 31], Sheltering Arms has replied [Doc. # 32], UniCare
has replied [Doc. # 33], and Tenet has filed a surreply [Doc. # 34].

Court concludes that UniCare's Motion should be **granted in part** and **denied in part**, and that Sheltering Arms' Motion should be **granted in part** and **denied in part**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Tenet is a Texas health care provider and UniCare is a health maintenance organization that provides health coverage pursuant to managed care contracts.  Effective June 1, 1999, Tenet and UniCare entered into a Managed Care Agreement under which UniCare would pay negotiated rates to Tenet for providing "Covered Services" to "Members" pursuant to "Service Agreements."  While an employee at Sheltering Arms, Sylvester was a participant in the employee welfare benefit plan (the "Plan"), under which eligible, enrolled employees could get health care coverage pursuant to the Group Service Agreement (the "Service Agreement") between UniCare and Sheltering Arms.

On June 14, 2005, Sylvester was admitted and hospitalized by Tenet for medical treatment.  On or about the same day, a representative of Tenet contacted UniCare to verify that Sylvester was covered under the Plan.  UniCare's records showed that Sylvester was an enrolled employee as of June 14, 2005.  Tenet alleges that UniCare "verified and represented [Sylvester's] medical insurance coverage, and provided preauthorization to Tenet to treat the patient."[2]  UniCare, however, contends that it "verified Sylvester's inpatient benefits and quoted a standard disclaimer," that "[t]his is not a guarantee of benefits.  All charges are subject to medical necessity, member eligibility, and all plan provisions in effect at the time

---

[2]      Tenet's Response [Doc. # 31], ¶ 5.

services are rendered.  These benefits are also contingent on the eligibility of the condition being treated."[3]  Sylvester assigned her rights to medical benefits available under the terms of the Service Agreement, if any, to Tenet.

Tenet alleges that it provided approximately $241,000 worth of medical services to Sylvester based on UniCare's representation that Sylvester was covered under the Plan.  On or about July 11, 2005, Tenet submitted a claim for reimbursement to UniCare.  Pursuant to the Managed Care Agreement, UniCare paid Tenet $132,827.34, the negotiated payment under the agreement, on July 27, 2005.  On August 5, 2005, Sheltering Arms informed UniCare that Sylvester had been terminated from employment on May 11, 2005, and that her benefits under the Plan terminated on June 1, 2005.  In September 2005, UniCare notified Tenet that it was requesting a refund of the claim payment under the terms of the Managed Care Agreement because Sylvester's benefits had terminated prior to her admission to the Hospital.

After Tenet refunded the payment to UniCare, Tenet filed suit against UniCare in Harris County District Court in Houston, Texas, alleging breach of contract, negligent misrepresentation, and violations of the Texas Insurance Code.  UniCare removed the case to federal court on October 25, 2007, on the ground that Tenet's state law claim for breach of contract was preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").  Tenet filed a Motion to Remand on

---

[3]     UniCare's Motion [Doc. # 27], ¶ 8.

November 13, 2007, which was denied by the Court on December 21, 2007.  On February

29, 2008, Tenet filed its First Amended Complaint, adding Sheltering Arms as a defendant

and asserting an ERISA claim for benefits under 29 U.S.C. § 1132(a)(1)(b) and the

Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*,

as well as a state law claim for negligent misrepresentation.  UniCare and Sheltering Arms

each have moved for summary judgment on all claims asserted by Tenet.

## II.   <u>LEGAL STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to

make a sufficient showing of the existence of an element essential to the party's case, and

on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also*

*Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th

Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether

the "pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v.*

*CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas

essential to the non-movant's claim in which there is an "absence of a genuine issue of

material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The

moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or

denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case."  *Id.*  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## II.   ANALYSIS

### A.   ERISA Claims

#### 1.   Claim for Benefits under § 1132(a)(1)(B)

Tenet, as an assignee of Sylvester's rights to benefits under the Plan, has asserted a claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover benefits due under

the terms of the Plan.  The parties do not dispute that Tenet was an assignee of Sylvester's rights to benefits under the Plan, nor do they dispute that the Plan is an ERISA plan. UniCare argues that Tenet's claim for benefits under § 1132(a)(1)(B) fails because the Plan granted UniCare discretionary authority, UniCare's decision to deny coverage was not arbitrary or capricious and, therefore, under the applicable standard of review, Tenet is not entitled to a reversal of UniCare's decision.  Tenet responds solely on the theory that the request for refund provision of the Managed Care Agreement is in conflict with state law, specifically § 843.347(g) of the Texas Insurance Code.

### a.      Conflict with § 843.347(g) of the Texas Insurance Code

Tenet alleges that Defendants' motions for summary judgment should be denied because the Managed Care Agreement violates the Texas Insurance Code, § 843.347(g). Defendants reply that this argument "is nothing short of raising a new cause of action against [the Defendants] for the first time after discovery has closed and in response to [the Defendants] dispositive motion[s]."[4]  Defendants request the Court to disregard Tenet's "newly-conceived cause of action."[5]  Tenet's original state court petition did include a claim for violations of the Texas Insurance Code.  However, Tenet's live pleading in federal court, the First Amended Complaint [Doc. # 17], does not include any such claim.  The deadline

---

[4]      UniCare's Reply [Doc. # 33], ¶ 5.

[5]      *Id.*

for amendments to the pleadings was February 29, 2008, and discovery closed on August 13, 2008.

A plaintiff seeking to amend its pleadings after a responsive pleading has been served, must seek leave of the Court or written consent of the adverse party.  FED. R. CIV. P. 15(a). Tenet did neither.  Whether such an amendment will be granted is within the Court's discretion.  *U.S. ex rel Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 392 (5th Cir. 2008). The Fifth Circuit has noted that "[a] party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its complaint." *Overseas Inns S.A. P.A. v. U.S.* 911 F.2d 1146, 1151 (5th Cir. 1990); *see also NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 964 (5th Cir. 1991).  Moreover, to the extent Tenet seeks implicitly to extend the amendment of pleadings deadline under Federal Rule of Civil Procedure 16(b), Tenet fails to show the necessary good cause.  *See Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).  Tenet has made no attempt to provide the Court with an explanation of whether there are adequate grounds for permitting Tenet to amend its pleadings or extend the amendment of pleadings deadline after Defendants filed dispositive motions for summary judgment, and the Court has independently determined no adequate reason exists.  Therefore, the Court disregards Tenet's arguments relating to alleged violations of the Texas Insurance Code in deciding whether Tenet has raised a genuine fact issue on its ERISA benefits claim.

### b.      Discretionary Authority

UniCare argues that Tenet's claim for benefits under § 1132(a)(1)(B) fails as a matter of law because UniCare's decision to deny coverage was neither arbitrary nor capricious, and thus Tenet is not entitled to a reversal of UniCare's decision.  Tenet disagrees.

The United States Supreme Court has held that the denial of benefits under an ERISA plan is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 342 (5th Cir. 2002); *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 314 (5th Cir. 2007).  If the administrator does have discretionary authority, a court will reverse the administrator's decision "only for abuse of discretion." *High v. E-Systems Inc.*, 459 F.3d 573, 576 (5th Cir. 2006) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999)).

Here, the Managed Care Agreement explicitly provides UniCare with discretionary authority: "[UniCare] or its designee shall be responsible for all determinations of whether a service is a Covered Service.  The authority of [UniCare] or its designee shall not be affected by the determination of any other person or party . . . ."[6]  Therefore, the Court applies an "abuse of discretion standard." *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 (5th Cir. 2006).

---

[6]      UniCare's Motion [Doc. # 27], Exh. 1-A: "Managed Care Agreement," § II(A)(11).

"In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously." *Meditrust*, 168 F.3d at 214 (internal quotations and citations omitted). The Court should first determine whether the Administrator applied a legally correct interpretation of the relevant Plan language. *See MacLachlan v. ExxonMobil Corp.*, 250 F.3d 472, 481 (5th Cir. 2003). If the interpretation is legally correct, there is no abuse of discretion. *See Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 270 (5th Cir.2004). If the administrator's interpretation is incorrect, the Court must consider whether there was an abuse of discretion. "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust*, 168 F.3d at 215 (internal quotations and citations omitted); *Lain*, 279 F.3d at 342. The administrator abuses its discretion if its decision is not supported by substantial evidence in the administrative record and is erroneous as a matter of law. *Wilbur v. Arco Chem. Co.*, 974 F.2d 631, 646 n. 12 (5th Cir. 1992); *see also Vega v. National Life Insurance Services,* Inc., 188 F.3d 287, 302 (5th Cir. 1999) ("Without some concrete evidence in the administrative record that supports the denial of the claim, we must find the administrator abused its discretion.").

The Fifth Circuit applies a "sliding scale" approach to benefits denials made by an administrator that is also the insurer. *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (en banc). Under this approach, the existence of a conflict is a factor to be

considered in determining whether the insurer abused its discretion in denying a claim.  *Id.*

"The greater the evidence of conflict on the part of the administrator, the less deferential our

abuse of discretion standard will be."  *Id.*  Where, as here, the only evidence of conflict is the

fact that the administrator and the insurer are the same entity, the administrator is "entitled

to all but a modicum" of the deference afforded to administrators without a conflict.

*Robinson*, 443 F.3d at 395 (citing *Lain*, 279 F.3d at 343).  "Under this standard, the basis for

[UniCare's] decision must be supported by 'some concrete evidence in the administrative

record.'"  *Id.* (citing  *Vega*, 188 F.3d at 302).

        UniCare's interpretation of the Plan provisions in denying Tenet's claim was correct

and, even if incorrect, was reasonable and not an abuse of discretion.  The Managed Care

Agreement clearly and unequivocally provides that "[Tenet] shall accept the rates set forth

in this Agreement as payment in full for all Covered Services provided to Members pursuant

to this Agreement."[7]  Members are defined as individuals who are "enrolled for coverage and

entitled to receive Covered Services through [UniCare] pursuant to a Services Agreement."[8]

There is no ambiguity in the Managed Care Agreement:  If an individual is not a Member,

that individual is not entitled to receive Covered Services under the Managed Care

Agreement.  Moreover, UniCare's decision was supported by concrete evidence in the

administrative record.  It is uncontested that Sylvester did not have coverage under the Plan

---

[7]        *Id.* § II(A)(1).

[8]        *Id.* § I(A).

on June 14, 2005, and it was solely on this basis that UniCare denied Tenet's claim by requesting a refund.   In denying Tenet's claim, UniCare did not act arbitrarily or capriciously.  The refund request by UniCare was not an abuse of discretion and Tenet is not entitled to a reversal of UniCare's decision.  Therefore, with respect to Tenet's claim for benefits under § 1132(a)(1)(B), Defendants' motions for summary judgment are **granted**.

### 2.    Proper Notification Under COBRA

Tenet alleges that UniCare and Sheltering Arms failed to inform it that Sylvester "was or may have been in an election period," during which she could have elected continuing coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq*.[9]  Tenet alleges that if it had been properly notified of the potential for COBRA election, then Tenet could have made payment on behalf of Sylvester for the COBRA premiums or arranged another method of payment for the premiums.[10]

COBRA requires that plan sponsors of group health plans provide plan participants who lose coverage because of a "qualifying event" the opportunity to elect continuing coverage on an individual basis.  *See Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir. 2002) (citing 29 U.S.C. §§ 1162, 1163); *see also* 29 C.F.R. § 2590.606-4(b).   After terminating Sylvester on May 11, 2005, Sheltering Arms sent Sylvester notification of her right to elect continuation coverage under the Plan.  Sylvester received this notification June

---

[9]      Amended Complaint [Doc. # 17], ¶ 28.

[10]      *Id.*

1, 2005.[11]   After notification, qualified beneficiaries have 60 days to elect continuation coverage.  29 U.S.C. § 1165(1).  Sylvester did not elect coverage during this period.[12]  There is no showing of any COBRA notice violation as to Sylvester.

Tenet also fails to meet its summary judgment burden to show it had any rights under COBRA vis à vis Sylvester.  Tenet was not a plan participant.  Tenet has failed to direct the Court to any authority establishing that UniCare or Sheltering Arms had an obligation to notify Tenet that Sylvester was in a COBRA election period.  Therefore, with respect to Tenet's COBRA notification claim, Defendants' motions for summary judgment are **granted**.

### 3.     Request for Plan Documents under 29 U.S.C. § 1132(c)(1)

Tenet asserts that it requested pertinent plan documents and information from Defendants as authorized in ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), in an effort to appeal Defendants' denial of Tenet's claim and that Defendants "have failed and refused to provide the requested information in spite of the fact it was undeniably clear that [Tenet] was entitled to such information."[13]   UniCare contends that it is not the "administrator" of the

---

[11]     UniCare's Motion [Doc. # 27-10], Exh 6: "Continuation Notice," at 10 of 28.  Where the parties' documents are not individually paginated, the Court cites to the Electronic Court Filing System automated pagination.

[12]     UniCare's Motion [Doc. # 27], Exh. 3: "Deposition of Susie Dunn," at 27.  Tenet does not explain why it did not ask Sylvester if she was still employed and/or if she qualified or had elected COBRA coverage.

[13]     Amended Complaint [Doc. # 17], ¶ 30.

Plan so it is not required to furnish Plan information.  Furthermore, Defendants contend that Tenet is not a Plan "participant" or "beneficiary" with standing to sue under § 1132(c).

Section 1132(c)(1) provides that an administrator who fails to provide certain required information to a plan participant or beneficiary *may*, in the court's discretion, be liable for civil penalties.   Section 1024(b)(2) requires an "administrator" to make copies of "instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary."   A claim for civil penalties for violation of § 1024(b)(2) may only be brought against an "administrator."  *See Averhart v. US West Mgmt. Pension Plan*, 46 F.3d 1480, 1489–90 (10th Cir. 1994); *Jones v. UOP*, 169 F.3d 141, 145 (7th Cir. 1994).   Because the Plan documents do not designate an "administrator," Sheltering Arms, the employer, is the "administrator" by operation of law.  *See* 29 U.S.C. §§ 1002(16)(A), (B).   Therefore, as a matter of law, UniCare owed no duty to provide information to Tenet, even if Tenet had properly requested them.  With respect to Tenet's request for Plan documents claim, UniCare's Motion for summary judgment is **granted**.

Sheltering Arms, through its adoption of UniCare's Motion, argues that Tenet is not a Plan beneficiary with standing to sue under § 1132(c).  Section 1132(a) enumerates which persons are entitled to sue, including a plan beneficiary.  The Fifth Circuit, however, has distinguished between the "rights of a beneficiary as referred to in ERISA, to receive covered medical services or reimbursement, and one entitled to receive payment as an assignee of such a beneficiary." *Hermann Hosp. v. MEBA Medical and Benefits Plan*, 959 F.2d 569, 576 (5th Cir. 1992).   An assignment of a right to payment does not convert Tenet into a

"beneficiary" for purposes of standing to sue under § 1132(c). Because Tenet is not a plan participant or a beneficiary, it has no right to review Sylvester's Plan documents under § 1124(b)(2), and therefore cannot recover civil penalties under § 1132(c). With respect to Tenet's request for Plan documents claim, Sheltering Arm's Motion for summary judgment is **granted**.

### B.      Negligent Misrepresentation Claim

Prior to providing medical services to Sylvester, a representative of Tenet contacted UniCare to verify that Sylvester was covered under the Plan. Tenet alleges that UniCare verified and represented Sylvester's medical insurance coverage, and provided preauthorization to Tenet to treat the patient. UniCare initially paid the claim, but then subsequently requested Tenet refund all the benefits paid because Sylvester's coverage terminated prior to her treatment by Tenet. Tenet alleges that on the basis of UniCare's misrepresentation of coverage, benefits, and commitment to make payment, it provided Sylvester with approximately $241,000 worth of medical services. UniCare disputes Tenet's characterization of parties' communications, contending that when it verified Sylvester's benefits it expressly disclaimed that the verification was a guarantee of benefits, and expressly stated that payment was subject to medical necessity, member eligibility, and plan provisions in effect at the time service was rendered.

### 1. Conflict-Preemption

As a threshold matter, Defendants argue that Tenet's state law claim for negligent misrepresentation is conflict preempted by ERISA because it stems from UniCare's allegedly wrongful denial of Tenet's claim for assigned medical benefits available under the Plan. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides that:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

A state law "relates to an ERISA plan if 'it has a connection with or reference to such a plan.'" *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)).  To prevail on a preemption theory, a defendant must prove that "(1) the claim 'addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 242 (5th Cir. 2006) (quoting *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004)).  Defendants bear the burden of proof on both of these elements.  *Id.*

The Fifth Circuit in *Transitional Hosps. Corp. v. Blue Cross and Blue Shield of Tex.*, 164 F.3d 952, 954–55 (5th Cir. 1999), clarified what had been characterized by some lower courts as tension between the Fifth Circuit panel decisions in *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990), and *Hermann Hosp. v. MEBA Med.*

& *Benefits Plan*, 845 F.2d 1286 (5th Cir. 1988) ("*Hermann I*"), cases that reached differing results regarding ERISA preemption of state law claims for negligent misrepresentation.  As explained in *Transitional Hospitals*, the *Memorial* opinion held that ERISA does not preempt state law claims for negligent misrepresentation when the claim is "brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage." *Id.* at 954 (citing *Memorial*, 904 F.2d at 243–46).  In contrast, *Hermann I* held that when the insured is covered at least in part by an ERISA plan, ERISA preempts state law claims for negligent misrepresentation if the "hospital seeks to recover benefits owed under an ERISA plan to a plan participant who has assigned her right to benefits to the hospital." *Id.* (citing *Hermann I*, 845 F.2d at 1290).  That is, when the claim concerns the *existence* of a patient's coverage, *Memorial* controls, and when the claim concerns the *extent* of a patient's coverage, *Hermann I* controls.

At a fundamental level, the parties' arguments amount to a disagreement over which decision is controlling on the facts in the case at bar—*Memorial* or *Hermann I*.  Defendants contend that despite Tenet's allegation that it expected to be paid all of its expenses because of UniCare's verification of Sylvester's benefits, "the real dispute in this case is not what UniCare said during its June 14th conversation with Tenet's representative, but whether UniCare properly determined whether or not certain charges were covered under the Plan."[14]

_____

[14]     UniCare's Motion [Doc. # 27], ¶ 25.

Defendants thus characterize the dispute as one "about the extent of plan coverage or benefits,"[15] and argue *Hermann I* should control to preempt Tenet's claim.  In contrast, Tenet characterizes its claim as independent from its separate claim for benefits, contending that "it did not simultaneously and implicitly give up any claim it had against UniCare apart from the assignment" of benefits claim under § 1132(a).  The gravamen of Tenet's claim is that UniCare represented that Sylvester was covered under the terms of the Plan when in fact Sylvester did not have coverage.  Under this characterization of the claim, Tenet argues that *Memorial* should control and the claim should not be preempted.  Tenet has the better argument.

In *Memorial*, the patient was the spouse of an employee of an employer that provided health insurance to its employees and its employee's dependants. *Memorial*, 904 F.2d at 238. This health insurance was administered by Northbrook Life Insurance Company ("Northbrook"). *Id.*  Before providing treatment, Memorial contacted the employer, which verified that the patient was covered and eligible to receive benefits.  This information, however, was incorrect. *Id.*  Before treatment, the patient had assigned to Memorial whatever plan benefits she had. *Id.*  After treatment, Northbrook informed Memorial that the patient was ineligible and denied Memorial's claim. *Id.*  The court of appeals held that Memorial's negligent misrepresentation claim was not preempted.  The court concluded that:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery

---

15      *Id.*, ¶ 31.

> against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan.  If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received.

*Id.* at 246. Furthermore, examining the Congressional intent behind ERISA, the Court held that the hospital's claim for negligent misrepresentation did not "raise[ ] any issue concerning the matters that Congress intended to be regulated exclusively by ERISA."  *Id.* at 247. Therefore, the court held that Memorial's state law claim for negligent misrepresentation was not preempted by § 514(a) of ERISA.

The facts in *Memorial* are closely analogous to those at bar. Tenet's claim concerns the existence of coverage.[16]

Defendants advance several counter-arguments.  First, Defendants contend that *Hermann I* controls because "[l]ike *Hermann I*, UniCare has not denied that Sylvester was covered under the Plan at one point in time."[17]  Defendants' reading of *Hermann I* would suggest that if at any point in time a patient was covered under a plan, even if the patient did not have any coverage at the time of treatment, *Hermann I* would control and a claim for negligent misrepresentation of coverage by healthcare provider would be preempted.  This reading misconstrues the basis for the *Hermann I* holding of preemption.  In *Hermann I*, prior to rendering medical services to the spouse of a participant in an ERISA plan, the ERISA

---

[16]    A "Member's coverage terminates on the date the Member ceases to be an Eligible Person."  UniCare's Motion [Doc. # 27], ¶ 10.

[17]    *Id.*, ¶ 29.

administrator verified the spouse's coverage to the hospital.   During the spouse's hospitalization and after her death, the hospital made unsuccessful efforts to obtain payment from the plan administrator, which asserted that the claim had neither been approved nor denied, but was being "investigated."  The court concluded that the insurer was not denying that coverage existed, but rather disputed the extent of coverage under the plan.  As discussed above, this circumstance is materially different from the case at bar, where UniCare denied that the Plan applied at all, *i.e.*, denied any coverage existed, at the time of treatment.

Defendants also contend that "the Fifth Circuit's holding in *Mayeaux* . . . is dispositive."[18] However, the facts in *Mayeaux* are clear: The insurer challenged whether a particular type of treatment was covered under the terms of the beneficiary's plan—that is, the extent of a patient's coverage—*not* whether the beneficiary had any coverage at all.  *See Mayeaux*, 376 F.3d at 423–424.  The Court is not persuaded by Defendants' attempts to distinguish *Memorial* or *Mayeaux*.

As explained by the Fifth Circuit in *Cypress Fairbanks Medical Center, Inc. v. Pan-American Life Insurance Co.*, 110 F.3d 280, 284 (5th Cir. 1997), and again in *Transitional Hospitals*, 164 F.3d at 955, "the proper inquiry is whether the beneficiary under the ERISA plan was covered at all by the terms of the health care policy, because if the beneficiary was not, the provider of health services acts as an independent, third party subject to our holding in *Memorial*."   The basis of Tenet's negligent misrepresentation claim is that UniCare

---

[18]     UniCare's Reply [Doc. # 33], ¶ 9.

misrepresented the existence of Sylvester's healthcare coverage, *Memorial* thus controls the Court's analysis.  Tenet's claim for negligent misrepresentation is not preempted by § 514(a) of ERISA.  The Court next turns to the issue of whether Tenet's claim for negligent misrepresentation is barred by other doctrines.

### 2.    Independent Injury Doctrine

As another threshold matter, Defendants contend that Tenet's negligent misrepresentation claim is barred by the independent injury doctrine.  Under that doctrine, the damages recoverable for a negligent misrepresentation are those necessary to compensate a plaintiff for the pecuniary loss legally caused by the misrepresentation in issue.  *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998).  Recoverable damages do not include the benefit of the plaintiff's contract with the defendant.  *Id.*  To demonstrate the existence of an independent injury, a plaintiff must seek a remedy that is different from contract damages because "benefit-of-the-bargain" damages are not recoverable for negligent misrepresentation claims.

Defendants contend that Tenet's claim "stems from the same set of facts that initially supported its breach of contract claim which now (allegedly) support its claim for benefits under section 1132(a)(1)(B),"[19] and that Tenet accordingly is not seeking a remedy different from contract damages.  Tenet responds that it is seeking a remedy for the negligent misrepresentation claim distinct from contract damages.  Tenet alleges that its measure of

---

[19]      UniCare's Motion [Doc. # 27], ¶ 41.

damages for the negligent misrepresentation claim is the approximately $241,000 worth of medical services it provided to Sylvester, while the measure of damages for the ERISA claim for benefits is the contracted rate of service of $132,827.34.

The Court agrees.  Tenet's claim for the value of the services rendered is distinct from the lesser, negotiated Plan-based damages.  Tenet thus has met its summary judgment burden and raised a genuine fact issue that it suffered the independent injury required under Texas law.  Summary judgment is denied on Tenet's negligent misrepresentation claim on this basis.

### 3.        Statute of Limitations

As a final threshold matter, Defendants contend that Tenet's claim for negligent misrepresentation is barred by the statute of limitations.  Defendants bear the burden of proof on this affirmative defense, and the Court must draw all reasonable inferences in favor of Tenet.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

Tenet initially filed this action in state court on September 12, 2007.  The original state court petition included a claim for negligent misrepresentation.  Under Texas law, negligent misrepresentation claims sound in negligence, not fraud, and are governed by negligence rules.  *TIG Ins. Co.  v. Aon Re Inc.*, 521 F.3d 351, 354–55 (5th Cir. 2008) (Owen, J.).  Consequently, negligent misrepresentation claims are subject to the two-year statute of limitations for tort, rather than the four-year statute of limitations applicable to fraud claims.  *Id.* (citing TEX. CIV. PRAC. & REM. CODE §16.003(a); *KPMG Peat Marwick v. Harrison Cty.*

*Housing Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (Owen, J.)).

In Texas negligence actions, the limitations period generally runs from "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *TIG Ins.*, 521 F.3d at 355 (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). Put another way, "a cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)).

Defendants contend that the claim accrued on June 14, 2005, the date of Tenet's benefits inquiry to UniCare and, therefore, Tenet's claim is barred by limitations. Tenet, however, argues that the discovery rule applies, and that Defendants' representation of coverage on June 14, 2005, did not become an actionable misrepresentation until September 29, 2005, when UniCare requested the refund.

Under Texas law, the discovery rule is an exception to the general rule that a cause of action accrues when a wrongful act causes some legal injury. *TIG Ins.*, 521 F.3d at 357. "When applied, the discovery rule defer[s] accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Id.* (citing *HECI Exploration*, 982 S.W.2d at 886 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)); *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998) ("In most cases, a cause of action accrues when a wrongful act causes an

injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur."); *see also Weaver v. Witt*, 561 S.W.2d 792, 793–94 (Tex. 1977) (the discovery rule provides that the statute of limitations will run "not from the date of the [defendant's] wrongful act or omission, but from the date that the nature of the injury was or should have been discovered by the plaintiff.").

"The determination of whether the discovery rule applies to a particular cause of action is a question of law." *TIG Ins.*, 521 F.3d at 357 (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)).  When a defendant moves for summary judgment on the basis of limitations and the plaintiff pleads the discovery rule, the defendant must conclusively prove the date of accrual and must negate application of the discovery rule.  *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 637 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Weaver*, 561 S.W.2d at 794); *cf. Bridges v. Metabolife Intern., Inc.*, 119 F. App'x. 660, 664 (5th Cir. 2005) (unpublished).

In 1994, based on the weight of then prevailing Texas authority,[20] the Fifth Circuit held that the discovery rule did not apply to a claim for negligent misrepresentation.  *See Kansa Reins. Co. Ltd. v. Congressional Mortgage Corp. of Tex.*, 20 F.3d 1362, 1372 (5th Cir. 1994).  Subsequent to *Kansa*, however, the Texas Supreme Court clarified that it followed a "categorical approach" to the application of the discovery rule.  *HECI Exploration*, 982 S.W.2d at 886; *Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453 (Tex.

---

[20]    *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

1996); *S.V. v. R.V.*, 933 S.W.2d 1 (Tex. 1996).  Under this approach, a court does not determine when the particular injury at bar was actually discovered, but rather analyzes whether that "type of injury" generally is discoverable by the exercise of reasonable diligence.  *TIG Ins.*, 521 F.3d at 357 (quoting *HECI Exploration*, 982 S.W.2d at 886 (citing *Altai*, 918 S.W.2d at 457)).   In *TIG Insurance*, the Fifth Circuit adopted the *HECI Exploration* approach and applied the discovery rule to a negligent misrepresentation claim. *Id.* at 359.[21]  The Court therefore analyzes whether the discovery rule applies to toll the limitations period in the negligent misrepresentation claim at bar.[22]

The Texas courts and, now, the Fifth Circuit have "articulated two unifying principles that generally apply in discovery rule cases."  *TIG Ins.*, 521 F.3d at 358 (citing *HECI Exploration*, 982 S.W.2d at 886 (citing *Altai*, 918 S.W.2d at 456; *S.V.*, 933 S.W.2d at 6)).[23] The discovery rule applies and will toll the limitations period only if (1) the injury is inherently undiscoverable, and (2) the evidence of the injury is objectively verifiable.  *Id.*

---

[21]     Fifth Circuit Judge Owen wrote the *TIG Insurance* decision for the panel. While on the Texas Supreme Court, she authored the *HECI Exploration* opinion.

[22]     This Court in *Hunton* held broadly, making an "*Erie* guess" that the discovery rule does not apply to negligent misrepresentation cases.  However, in light of more recent authority and further study, the Court concludes this conclusion is overbroad.

[23]     Various Texas courts of appeals have applied the discovery rule to negligent misrepresentation claims.  *See, e.g.*, *Exxon Corp. v. Miesch*, 180 S.W.3d 299, 338 (Tex. App.—Corpus Christi 2005, pet. granted, Dec. 1, 2006); *Per-Se Techs., Inc. v. Sybase, Inc.*, 2005 WL 1539291, at *4 (Tex. App.—Houston [1st Dist.] 2005) (unpublished); *Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc.*, 54 S.W.3d 57, 60–61 (Tex. App.—Texarkana 2001, pet. denied); *Matthiessen v. Schafer*, 27 S.W.3d 25, 31 (Tex. App.—San Antonio 2000, pet. denied); *Hendricks v. Thornton*, 973 S.W.2d 348, 365 (Tex. App.—Beaumont 1998, pet. denied).

An injury is inherently undiscoverable if it is "by its nature unlikely to be discovered within the prescribed limitations period despite due diligence."  *TIG Ins.*, 521 F.3d at 358 (citing *S.V.*, 933 S.W.2d at 7).  An injury need not be absolutely impossible to discover in order to be inherently undiscoverable.  *S.V.*, 933 S.W.2d at 7.

Defendants argue that Tenet's injury was not "inherently undiscoverable" because Tenet could have made one call to the Plan Sponsor to determine whether Sylvester was employed and, if not, whether she was in the COBRA-election period.[24]  Tenet counters that it had no reason to call the Plan Sponsor concerning coverage because it had received payment in July 2005, and that it did not discover until September 29, 2005, when it received written notice from UniCare that Sylvester's coverage was retroactively terminated as of June 1, 2005.

The injury in issue is the provision of medical services without entitlement to payment.  The Court concludes that Tenet's injury was not inherently undiscoverable. Defendants argue and Tenet does not deny that Tenet without much difficulty could have contacted Sylvester's employer, Sheltering Arms, to determine if Sylvester was employed before rendering services (or shortly after services began).  Tenet did not do so and provides no reason why not.  Indeed, nowhere in the record is there an explanation why Tenet did not simply ask Sylvester herself or ask others associated with her about her employment status.[25]

---

[24]     *See* UniCare's Reply [Doc. # 33], ¶ 18.

[25]     The *HECI Exploration* court explained as to whether the type of injury is inherently
(continued...)

"Additionally, we live in a world of high employee mobility." *Altai*, 918 S.W.2d at 457. There are frequent instances of persons changing employment, a fact of which Tenet must have been aware.

Entitlement to benefit of the discovery rule also requires that Tenet have met its obligation to exercise reasonable diligence in protecting its interests.  While Tenet may have conformed to its standard operating procedure by contacting UniCare to verify Sylvester's coverage under the Plan prior to administering healthcare services to Sylvester, there is no explanation why it could not have taken another step, particularly in a case such as this where sizable expenses were to be incurred.[26]  The facts in *TIG Insurance* are instructive and can be summarized as follows: TIG Insurance Company sued its broker Aon Re, Inc., for failing to provide complete information to a reinsurer with whom TIG negotiated a reinsurance treaty.  The treaty was rescinded as a result of the incomplete information, and TIG asserted

---

[25]      (...continued)
undiscoverable, "[w]hen a failure to notify is the basis for a cause of action, a plaintiff knows or should have known of the failure to notify when it knows or should have known the facts about which it was to be notified." *HECI Exploration*, 982 S.W.2d at 885.  To the extent Tenet "should have known" of Sylvester's employment status by asking proper questions earlier, it should also have known of UniCare's or Sheltering Arms' failure to inform it of those facts at that time.

[26]      The Court recognizes that in a different context, the Fifth Circuit noted that the Texas courts have recognized that the commercial realities of providing health care means that "[h]ospitals and other health care providers must, and do, rely upon the insurance carriers' representations of coverage in making their decisions regarding admission of potential patients." *Memorial*, 904 F.2d at 246.  However, this observation was *dicta* in the context of a decision of whether a claim for violation of Texas Insurance Code § 21.21 was preempted by ERISA.  There was no issue of application of the discovery rule or whether the injury of non-payment was inherently undiscoverable.

causes of action against Aon Re for negligent misrepresentation.  The court held that the "injury in this case, the consummation of an agreement between TIG and U.S. Life that was based on incomplete underwriting data, is not inherently undiscoverable because it is the type of injury that could have been discovered by the exercise of reasonable diligence." *TIG Ins.*, 521 F.3d at 358. "[One] source is the party with whom it is about to contract.  Inquiry could be made to determine or confirm the facts and assumptions on which the bargain was to be based." *Id.*  As in *TIG Insurance*, Tenet had sources from which it could verify the accuracy of the information it had received, including from Sheltering Arms and from Sylvester herself, yet it did not do so.

Finally, as a practical matter, Tenet became aware of Sylvester's lack of coverage in September 2005, only a couple of months after the inquiry was made and services were rendered in June and July 2005.  There is no reason that Tenet could not have asserted its negligent misrepresentation claim at some point within the following twenty-one months and within two year limitations period, rather than a month late, in October, 2007.

This outcome is consistent with the analysis in the seminal case of *Computer Associates International, Inc. v. Altai, Inc*., a case decided by the Texas Supreme Court on a certified question from the Second Circuit.   918 S.W.2d 457.   In holding that a misappropriation of trade secrets claim did not warrant application of the discovery rule, the *Altai* court emphasized the general principle that courts "must understand the objective of statutes of limitations, and their purpose to compel the assertion of claims within a reasonable period while the evidence is fresh in the minds of the parties and witnesses.  *Id.* at 455 (citing

*Price v. Estate of Anderson*, 522 S.W.2d 690, 692 (Tex. 1975); *Gaddis v. Smith*, 417 S.W.2d 577, 578 (Tex. 1967)); *see Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 545 (Tex. 1986). The *Altai* court added, that the discovery rule, "in application, proves to be a very limited exception to statutes of limitations." *Id.*   The Court recognized "the 'shocking results' of barring a plaintiff's suit before the injury has even been discovered," *Altai*, 918 S.W.2d at 457 (citing *Gaddis*, 417 S.W.2d at 581; *Hays v. Hall*, 488 S.W.2d 412, 414 (Tex. 1972)), but held that this concern was not sufficient reason to extend the discovery rule, which is a "limited exception to strict compliance with the statute of limitations." *Id.* at 457 (citing *Trinity River Auth.*, 889 S.W.2d at 262).  Thus, the Supreme Court held the discovery rule did not apply to toll the statute of limitations for the difficult to ascertain claim such as a misappropriations of trade secrets. *Id.* at 457.[27]

The Court accordingly concludes that in this case the discovery rule does not toll the limitations period and Tenet's negligent misrepresentation claim is time barred.[28]  Because

---

[27]     Indeed, this is not a case where Tenet did not learn of its injury until more than two years after the allegedly negligent misrepresentation in issue.

[28]     In the interest of completeness, the Court addresses the second prong of the discovery rule test, whether an injury is "objectively verifiable." The Court here must determine if the presence of injury and the producing wrongful act cannot be disputed. *S.V.*, 933 S.W.2d at 6–7. "Allowing late-filed claims that are inherently undiscoverable while requiring objectively verifiable injury reduces the likelihood of injustice in cutting off valid claims while affording some protection against stale and fraudulent claims." *Id.* at 15.  In the case at bar, the injury is the denial of payment for medical services rendered.  This injury must be viewed categorically.  Denial of payment for medical services given to a person not covered by a healthcare plan is objectively verifiable at or about the time the services are rendered, once the fees and expenses, and the

(continued...)

the law on the discovery rule is difficult to apply, the Court in an exercise of caution addresses the merits of Tenet's negligent misrepresentation claim.

### 4.      Merits of the Negligent Misrepresentation Claim

As discussed previously, a representative of Tenet contacted UniCare to verify that Sylvester was covered under the Plan prior to providing medical treatment to Sylvester. Tenet alleges that UniCare verified and represented Sylvester's medical insurance coverage, and provided pre-authorization to Tenet to treat the patient.  Defendants contend that the administrative record and testimony from Sheltering Arms' corporate representative establish without contradiction that UniCare did not make a negligent misrepresentation as a matter of law.

Texas law includes the tort of negligent misrepresentation as defined by the Restatement (Second) of Torts § 552. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).   The elements of a claim for negligent misrepresentation are (1) the representation is made by a defendant in the course of his business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

---

[28]      (...continued)
coverage, are known.  In this case, the injury was objectively verifiable, albeit only after UniCare sought the refund from Tenet in September 2005.  Only then did Tenet actually suffer any injury by being denied payment for healthcare services rendered months earlier.

(4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Roof Sys.,*

*Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 438 (Tex. App.—Houston [14th Dist.] 2004,

no pet.) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). The

parties do not contest the first element, that the alleged misrepresentation was made by

UniCare in the course of its business. The dispute centers on the remaining elements.

### a.    False Information

As an initial matter, Sheltering Arms contends that it made no representation of any

kind to Tenet. Tenet does not dispute this, stating only that "UniCare affirmatively

represented to Tenet the patient was covered."[29] Tenet has failed to meet its summary

judgment burden to designate specific facts showing that there is a genuine issue of material

fact for trial with respect to its claim for negligent misrepresentation against Sheltering Arms.

*Littlefield*, 268 F.3d at 282. The Court concludes that Sheltering Arms is entitled to summary

judgment on Tenet's negligent misrepresentation claim.

The parties agree that with respect to the second element, the type of "false

information" must be a misstatement of existing fact, not a promise of future conduct. *Allied*

*Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet.

denied); *see also Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th

Cir. 1996). UniCare contends that the alleged promise to pay made to Tenet during the

coverage verification call on June 14, 2005, was a promise of future conduct and, therefore,

---

[29]    Tenet's Response [Doc. # 31], ¶ 30.

cannot give rise to a claim for negligent misrepresentation.  Tenet contends that the underlying basis of the claim is that UniCare represented that Sylvester had coverage, not that UniCare promised to pay for the claims.

UniCare directs the Court to *Tull v. Chubb Group Ins. Co.*, 146 S.W.3d 689 (Tex. App.—Amarillo 2004, no pet.), for the proposition that an insurer's statements about future actions it would take in settling the claims were not statements of existing fact.  UniCare alleges that *Tull* provides an adequate foundation for the Court to dismiss Tenet's negligent misrepresentation claim.  The Court disagrees.  *Tull* is materially distinguishable from the case at bar.  In *Tull*, the plaintiffs (the Tulls) were injured in an automobile collision with an individual driving the pickup truck owned by her employer.  After the accident the employer's insurance company (Federal) paid the Tulls' property damage claim.  The Tulls had automobile insurance from Farm Bureau, and the policy included uninsured motorist coverage.  During telephone conversations between Federal and Farm Bureau, Federal informed Farm Bureau that Federal had enough coverage to settle and did not anticipate exposure for Farm Bureau.  The Tulls later brought suit against both Federal and Farm Bureau, and Farm Bureau brought a cross claim against Federal.  Farm Bureau alleged that in reliance on Federal's representation, it did not attempt to investigate the claim fully and did not attempt to negotiate a resolution of the claim with the Tulls.  Fundamentally, the basis for Farm Bureau's negligent misrepresentation claim was that Federal represented that when was negotiating a settlement with the Tulls that it would not look to Farm Bureau's coverage. On the basis of these facts, the court held that Federal's statement to Farm Bureau were "at

most representations concerning Federal's future handling of the Tulls' personal injury claims.  Viewed in the light most favorable to Farm Bureau, all of the statements still refer to actions [Federal's claim investigator] felt Federal would take in settlement of the claims. They are not statements of existing fact."  *Id.* at 698.

The situation present here is different from that in *Tull*.  Tenet's negligent misrepresentation claim focuses on UniCare's representation that Sylvester had healthcare coverage, an existing fact, not a representation of future payment.  When the UniCare representative stated to Tenet on June 14, 2005, that Sylvester had coverage, the representation was—at that time—untrue.  Tenet has established a genuine fact issue on the second element of a negligent misrepresentation claim as to UniCare.

### b.       Reasonable Care and Competence

UniCare contends that it used reasonable care and competence in communicating with Tenet.  Tenet responds that it is "unreasonable, and a serious question of competency, for UniCare not to have a more reliable system in place with Sheltering Arms to keep these types of misrepresentation of coverage from occurring."[30]  What is reasonable is dependent on the circumstances.  RESTATEMENT (SECOND) TORTS § 552, cmt. e.

UniCare summarizes the circumstances as follows: Sheltering Arms was responsible for maintaining eligibility and coverage information and was responsible for communicating enrollment and coverage changes to UniCare.  On June 14, 2005, UniCare had not been

---

[30]       Tenet's Response [Doc. # 31], ¶ 31.

informed by Sheltering Arms of Sylvester's prior termination and, therefore, UniCare's records reflected that Sylvester was still an enrolled employee under the Plan.[31]

Tenet does not contest that as of June 14, 2005, Sheltering Arms had not informed UniCare that Sylvester's employment had been terminated.  Nor has Tenet presented any evidence indicating that UniCare had reason to believe the information in its records was inaccurate as of that date.  Under these circumstances, as a matter of law, it was not unreasonable for UniCare to inform Tenet that its records showed Sylvester had coverage under the Plan.  The reasonableness of UniCare's actions is further supported by the standard disclaimer UniCare provided Tenet in connection with the verification of coverage on June 14, 2005.  UniCare's representative stated: "This is not a guarantee of benefits. All charges are subject to medical necessity, member eligibility, and all plan provisions in effect at the time services are rendered.  These benefits are also contingent on the eligibility of the condition being treated."[32]  Tenet does not dispute that this disclaimer was provided.  The disclaimer informed Tenet that the verification was subject to subsequent review.  In fact, the disclaimer specifically informed Tenet that member eligibility—that is, whether there was coverage under the Plan—was subject to review.

The Court concludes that UniCare used reasonable care and competence in communicating with Tenet.  Tenet has failed to raise a genuine fact issue on the third element

---

[31]     UniCare's Motion [Doc. # 27], ¶ 34.

[32]     *Id.* at Exh. 1: "Affidavit of Barbara Clark," ¶ 7.

of a negligent misrepresentation claim, and therefore UniCare is entitled to summary judgment.

### c.      Pecuniary Loss by Justifiable Reliance

Alternatively, the Court concludes that Tenet's negligent misrepresentation claim fails on the fourth element.    Texas law requires that a plaintiff claiming negligent misrepresentation prove that its reliance was justifiable; that is, the reliance must be reasonable.  *See Scottish Heritable Trust v. Peat Marwick Main & Co.*, 81 F.3d 606, 615 (5th Cir. 1996); *Am. Tobacco Co. Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997).  Whether reliance is justifiable rests on the nature of the parties' relationship.  *McCamish*, 991 S.W.2d at 794.

UniCare and Tenet are both sophisticated actors that entered into a detailed contract to govern their relationship.  The Managed Care Agreement specifically provides that "[Tenet] may verify the current status of a Member's eligibility for Covered Services by contacting [UniCare] or its designee; provided, however, that in the event [UniCare] subsequently determines that a person was not a Member, [UniCare] shall not be liable for payment, and [Tenet] may directly bill such person for his or her service."[33]  Furthermore, the Managed Care Agreement also provides that UniCare has "no obligation under this Agreement to pay for services rendered to individuals who no longer are Members except

---

[33]     *Id.* at Exh. 1-A: "Managed Care Agreement," § II(A)(5).

as provided in a Services Agreement."[34]  Parties are presumed to know the legal effect of their contracts.  *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008).  Having entered into the Managed Care Agreement, Tenet was aware that there was a risk of non-payment if a situation like the one at bar occurred.  Furthermore, Tenet does not controvert UniCare's proof that it expressly reminded Tenet of this risk-allocation provision of the contract when UniCare gave the standard disclaimer during the June 14, 2005, verification call.  Under these circumstances, Tenet cannot show it justifiably relied on an irrevocable guarantee prior to treatment that Sylvester was covered under the Plan because Tenet received only UniCare's qualified representation.

Tenet has failed to raise a genuine fact issue on the fourth element of its negligent misrepresentation claim.  UniCare therefore is entitled to summary judgment.

For the foregoing reasons, Defendants' motions for summary judgment with respect to Tenet's negligent misrepresentation claim are **granted**.

### C.   Attorneys' Fees and Costs

UniCare and Sheltering Arms seek recovery of attorneys' fees and costs from Tenet pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).  The Court in its discretion may award attorneys' fees to a plaintiff that prevails on an ERISA claim.  *See id.*; *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 820–821 (5th Cir. 1997); *Sims v. Great-West Life Assur.*

---

[34]      *Id.* § II(B)(7).

*Co.*, 941 F.2d 368, 373 (5th Cir.1991).[35]   The Fifth Circuit suggests that the district court

consider five factors in its analysis:

(1)      the degree of the opposing parties' culpability or bad faith;

(2)      the ability of the opposing parties to satisfy an award of attorneys' fees;

(3)      whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances;

(4)      whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5)      the relative merits of the parties' positions.

*Wegner*, 129 F.3d at 821 (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266

(5th Cir. 1980); *Todd* [*v. AIG Insur. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995)]).  "No one of

these factors is necessarily decisive, and some may not be apropos in a given case, but

together they are the nuclei of concerns that a court should address in applying [§ 1132(g)]."

*Id.* (citing *Bowen*, 624 F.2d at 1266).

If the Court concludes that a party is entitled to attorney's fees, the Court must "utilize

the lodestar method to determine the amount to be awarded." *Lain v. UNUM Life Ins. Co. of*

*America*,  279 F.3d 337, 348 (5th Cir. 2002) (quoting *Wegner*, 129 F.3d at 822). In so doing,

the Court must assess the "reasonable number of hours expended on the litigation and the

---

[35]      Section 1132(g) provides in pertinent part: " (1) In any action under this subchapter (other than an action described in paragraph (2) [not here relevant]) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the 'lodestar.'" *Id.* (internal footnote and citation omitted).

For the reasons set forth below, the Court finds that attorney's fees should not be awarded to UniCare or Sheltering Arms.

**1.      Degree of the Opposing Parties' Culpability or Bad Faith**   There is no evidence that Tenet brought this claim in bad faith.  Based on all the circumstances, this factor weighs against a fee award.

**2.      The Ability of the Opposing Parties to Satisfy an Award of Attorneys' Fees**

There is no evidence in the record on this subject.

**3.      Deterrence of Similar Conduct by Defendant**

The next factor is whether an award of attorney's fees against Tenet would deter Tenet or others acting under similar circumstances from bringing such claims for benefits under § 1132(a)(1)(B).  The Court is unpersuaded deterrence would result from a fee award or that there is a need for such deterrence.

**4.      Benefit to All Participants and Beneficiaries of an ERISA Plan or to Resolve a Significant Legal Question Regarding ERISA Itself**

There is no evidence that Defendants' recovery of attorney's fees would benefit others besides themselves.  Nor has the Court adjudicated any significant legal question regarding ERISA as a result of this case.  This factor weighs against granting attorney's fees.

**5.      The Relative Merits of the Parties' Positions**

The Court finds that each party has asserted certain valid and some unpersuasive points.  This factor is neutral.

In sum, Defendants UniCare and Sheltering Arms have not met their burden to show a good basis for an award of attorneys' fees in this case.  Defendants' motions for summary judgment seeking recovery of attorneys' fees and costs are **denied**.

## III.    <u>CONCLUSION</u>

The Court concludes that Tenet has not met its summary judgment burden to demonstrate a genuine issue of material fact on the merits of any claim or theory it asserts. The Court also concludes that Defendants have not met their burden to show a good basis for an award of attorneys' fees.  It is therefore

**ORDERED** that UniCare's Motion [Doc. # 27] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that Sheltering Arms' Motion [Doc. # 28] is **GRANTED in part** and **DENIED in part**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this 26th day of **November, 2008**.

Nancy F. Atlas
United States District Judge